```
UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF TENNESSEE
            AT KNOXVILLE
```

| | |
|---|---|
| RHONDA GIBSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE PRUDENTIAL INSURANCE )<br>COMPANY OF AMERICA, )<br>)<br>Defendant. ) | No.: 3:06-CV-140<br>(VARLAN/SHIRLEY) |

## **MEMORANDUM OPINION**

Plaintiff Rhonda Gibson filed this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.§ 1001, *et seq.*, to recover long-term disability benefits from defendant, The Prudential Life Insurance Company of America ("Prudential"). The case is before the Court on the plaintiff's Motion for Judgment on the Administrative Record [Doc. 6] and the defendant's Motion for Judgment on the Record [Doc. 7]. Plaintiff argues that defendant acted arbitrarily and capriciously in the refusal to continue payment of her long-term disability benefits and urges the Court to reverse defendant's administrative decision to that effect. Plaintiff also contends that defendant breached a fiduciary duty owed to her by failing to provide her with rehabilitative assistance. Defendant argues that the decision to deny plaintiff long-term disability benefits is supported by the administrative record and should be affirmed. As to plaintiff's breach of fiduciary duty claim, defendant argues that it breached no duty because it was not required to offer rehabilitative assistance

under the terms of the benefit plan at issue in this case, and in the alternative, that plaintiff is barred by ERISA from bringing such a claim in this action.

The Court has carefully considered the parties' briefs [Docs. 8, 9, 10], as well as the entire administrative record. For the reasons set forth herein, the Court will deny plaintiff's motion for judgment on the administrative record and grant defendant's motion for judgment on the record.

**I.  Relevant Facts**

Plaintiff was employed by Hartco Flooring Company ("Hartco") as a wood floor grader in Oneida, Tennessee. [Doc. 6 at 2; Doc. 8 at 1; Administrative Record ("AR") at 93.] This position required that plaintiff constantly stand, work with her arms over her head while standing, and work bent over while in a standing or stooping position. [AR at 238.] As an employee of Hartco, plaintiff was covered under Hartco's Group Policy No. 77239 (the "Plan"), a policy providing long-term disability benefits and subject to ERISA. [*Id.* at 52-91.] Under the terms of the Plan, Armstrong World Industries, Inc. ("Armstrong"), Hartco's parent company, is the plan sponsor and administrator, [*id.* at 85-86], and defendant, Prudential, is the claims administrator [*id.* at 86]. The Plan sets forth two definitions of what it means to be disabled, with these varying based upon how long the covered individual has been receiving disability benefits:

You are disabled when Prudential determines that:

2

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

After 24 months of payment, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

[AR at 64.] The Plan goes on to define "gainful occupation" as being "an occupation, including self employment, that is or can be expected to provide you with income equal to or at least 60% of your indexed monthly earnings within 12 months of your return to work." [*Id.*]

On January 27, 2003, plaintiff sustained a work-related injury while pulling lumber that resulted in her experiencing neck, back, and shoulder pain. [AR at 93-94; 246.] As a result, plaintiff went out of work on April 23, 2003, [*id.* at 94], and was eventually placed on short-term disability leave for six months. [*See id.* at 104.]

On October 3, 2003, plaintiff applied for long-term disability benefits. [AR at 93-94.] Defendant informed her by letter on June 22, 2004 that this request was approved effective as of October 21, 2003 on the basis of defendant's determination that, pursuant to the Plan's definition of disability, her injury resulted in her being unable to perform the material and substantial duties of her regular occupation. [*Id.* at 115, 122.] This letter stated that defendant "can require examinations as often as it is reasonable to do so" and "may also require you to be interviewed by an authorized Prudential representative." [*Id.* at 115.] The letter further noted that "[r]efusal to be examined or interviewed may result in denial or termination of

3

your claim." [*Id.*] On the same date, defendant also sent a letter to plaintiff's counsel informing him of its approval of her request for long-term disability benefits, and in that letter noted that "[w]e will follow [up] with you for periodic updated medical information and we will ask that you notify us when Ms. Gibson has recovered and returned to work." [*Id.* at 122.]

After this award of long-term disability benefits, defendant states that it continued to "monitor the plaintiff's medical progress." [Doc. 8 at 3.] To this end, and as the administrative record indicates, on December 20, 2004, defendant sent plaintiff a fax requesting that she indicate whether she was interested in obtaining vocational assistance services. [AR at 133.] After receiving no response, defendant again contacted plaintiff by letter on January 20, 2005, and ask that she provide it with information on her specific restrictions and limitations so that it could "identify alternative employment possibilities while recovering." [*Id.* at 134.] Plaintiff's counsel responded by letter on March 24, 2005, and enclosed a medical report from Dr. Merrill White, plaintiff's primary care physician, indicating that as of May 7, 2003, plaintiff was unable to engage in overhead work and any lifting over twenty pounds, and that plaintiff required alternate standing and sitting while working. [AR at 291.] Defendant then sent plaintiff a letter on April 18, 2005, noting the Plan's bifurcated definition of "total disability" and indicating that plaintiff's "initial period of benefits as defined above will end on October 20, 2005." [*Id.* at 136.]

Also during this time, the administrative record shows that defendant ordered an employability assessment of plaintiff be undertaken on April 1, 2005 by Thomas Virgilio,

a vocational rehabilitation specialist. [AR at 188-189.] This assessment noted that plaintiff was "a HS graduate with 6 years of work experience at her former, Armstrong Wood Products" and that the assessment would take into consideration "recommendations made by Dr. White," resulting in a focus on "occupations with tasks that are performed while standing and sitting...." [*Id.* at 188.] As a result, the assessment "identified a number of occupations for which [plaintiff] has the residual functional capacity to perform given her current medical status" and in which plaintiff "is expected to be reasonably employable...as they would require minimal on-the-job training after hire." [*Id.*] The assessment listed the following positions as viable occupations for plaintiff:

- Storage Facility Rental Clerk
- Ticket Selling Cashier
- Attendant, Arcade
- Desk Clerk, Bowling Floor
- Tanning Salon Attendant

[*Id.* at 188-189.]

Defendant's next correspondence with plaintiff occurred when it informed her by letter on October 19, 2005 that her long-term disability benefits would be terminated as of October 21, 2005 based upon its decision that she was no longer disabled, as that term is defined by the Plan, because she was deemed capable of performing other gainful occupations. [AR at 138-140.] Specifically, the letter referred to the above-listed jobs identified by the April 1, 2005 employability assessment as evidencing that plaintiff had "general transferable skills and residual functional capacity to perform given [her] current medical status." [*Id.* at 139.] The letter also noted that defendant determined plaintiff's

5

employability based upon the April 1, 2005 employability assessment of plaintiff undertaken on April 1, 2005, State of Kentucky labor information and statistics, and Dr. White's May 7, 2003 evaluation of plaintiff and her physical restrictions. [*Id.*] Lastly, this letter stated that plaintiff had the right to appeal defendant's decision to terminate her benefits and that such an appeal was required to be filed within 180 days of plaintiff's receipt of the letter. [*Id.*]

On December 20, 2005, plaintiff notified defendant by letter that she was appealing its decision to terminate her long-term disability benefits. [AR at 147.] Included with this letter was a medical report prepared on November 19, 2005 by Dr. C. M. Salekin, [*id.* at 160-164], and a vocational report prepared on December 13, 2005 by Norman Hankins, a vocational expert, [*id.* at 148-156.] Dr. Salekin's report notes that he saw her on a "follow-up evaluation" as a result of "right shoulder and neck pain and pain between the shoulder blades which she sustained after a motor vehicle accident on November 4, 2003," [*id.* at 160], and goes on to opine that while plaintiff suffers from "severe" pain, [*id.* at 161], she could engage in the following activities:

- Ability to lift and carry ten pounds on an occasional basis;
- Ability to lift and carry less than ten pounds on a frequent basis;
- Ability to twist, stoop, climb stairs, and climb ladders occasionally; and
- Reaching, handling, feeling, fingering, seeing, hearing and speaking with no restrictions.

[*Id.* at 162-163.] The only activities identified in Dr. Salekin's report as being altogether unperformable by plaintiff were crouching and pushing and pulling. [*Id.* at 163.] Mr. Hankins then used this report to come to the conclusion in his evaluation that plaintiff

"cannot meet the demands of her prior job or any other job for which she was employable in terms of training and work experience." [*Id.* at 156.]

On January 5, 2006, defendant informed plaintiff's counsel by letter that it was "conducting a thorough evaluation of the information currently within [plaintiff's] file" and that plaintiff should submit any additional information she would like to be considered in that analysis. [AR at 166.] As a part of this review, defendant arranged to have plaintiff's file, including all medical documentation submitted by plaintiff up to that point, reviewed by a "physician who specializes in Physical Medicine and Rehabilitation." [*Id.* at 167.] This review was conducted by Dr. Neil A. Friedman, a physician board certified in physical medicine and rehabilitation and eletrodiagnostic medicine. [*Id.* at 302.] Dr. Friedman's analysis summarized the various records he used in his review, including the reports of Dr. Salekin and Mr. Hankins, [*id.* at 297-300], and concluded that while plaintiff "does have functional impairments subsequent April 24, 2005," including "inability to perform repetitive cervical movements, limited ability to work with the left arm above shoulder level, and limitation of lifting with the left arm greater than 20 pounds," plaintiff could work with the following permanent limitations: "no repetitive cervical motion, no repetitive use of the left upper extremity above shoulder level, and no lifting/carrying/pushing/pulling greater than 20 pounds with the left upper extremity." [*Id.* at 301.] Dr. Friedman's report and all of plaintiff's medical records were then reviewed by Michael Chretien, a vocational rehabilitative counselor, on February 14, 2006, and from Dr. Friedman's assessment of

7

plaintiff, Mr. Chretien confirmed that plaintiff had the functional capacity to perform the jobs identified in the employability assessment previously undertaken on plaintiff. [*Id.* at 192.]

As a result of this analysis, defendant denied plaintiff's appeal by letter on February 16, 2006. [AR at 174-177.] In this letter, defendant recited its methodology for reviewing plaintiff's medical records and its reasons for terminating her long-term disability benefits claim, ultimately concluding that "[a]s we were able to identify several alternate, gainful occupations that Ms. Gibson could perform within her medically supported restrictions and limitations, she no longer meets the definition of disability beyond the 24 month own [sic] occupational period." [*Id.* at 176.] This letter concluded by noting that plaintiff could file a second appeal of this decision and that the filing of such an appeal "will not affect your rights to sue under ERISA." [*Id.*] Plaintiff chose to file suit rather than file a second appeal and did so on March 22, 2006 in the Chancery Court for Scott County, Tennessee. [Doc. 1 at 4.] Prudential removed the case to this Court on April 13, 2006, on the basis of federal question jurisdiction. [*Id.* at 1-2.]

**I.  Analysis**

    A.    <u>Standard of review</u>

This action seeking a review of the denial of plaintiff's benefits is governed by ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides as follows:

> A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to further benefits under the terms of the plan.

In *Wilkins v. Baptist Healthcare Systems*, 150 F.3d 609, 617-20 (6th Cir. 1998), the Sixth Circuit established guidelines under which district courts must adjudicate ERISA cases brought before them for judicial review. The Sixth Circuit explained that using summary judgment as a tool for the adjudication of ERISA cases does not properly comport with the purpose of summary judgment. *Id*. at 619. Because the role of a district court in ERISA matters is not to determine whether issues of fact exist for trial, but to review the administrative record before it, district courts should more properly characterize their role in such proceedings as encompassing elements of both bench trials and summary judgments. *Id*. at 619-20. Following these guidelines, the district court proceeds by making adjudications on both fact and law as would occur in a bench trial while handling the matter in an expedited fashion resembling summary judgment. *Id*.

Furthermore, *Wilkins*, following Supreme Court precedent, dictates this Court's standard of review in ERISA matters. Under *Wilkins*, this Court has two possible standards of review. If the trustees of an employee benefits plan do not have discretion to determine eligibility for benefits or to construe the terms of the plan in question, a court is required to undertake a *de novo* review of the administrators' decision. *Id*. at 613. On the other hand, where a benefits plan vests discretion with the administrators, a court may only disturb the administrators' decision if it finds the basis of such a decision to be arbitrary and capricious.

9

*Id.* at 616 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Significantly, regardless of the standard of review applied to the administrators' decision, "in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Admin., Inc.*, 152 F.3d 514, 522 (6th Cir. 1998) (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)).

There is some confusion over the applicable standard of review in this case. In her motion for judgment on the administrative record, plaintiff states that the arbitrary and capricious standard of review applies in this case, [Doc. 6 at 7-8], and defendant states the same in its memorandum in support of its motion for judgment on the record [Doc. 8 at 7-8.] However, in the same paragraph in which plaintiff admits that the Plan "does contain a general grant of discretion," [Doc. 6 at 8], plaintiff then attempts to depart from this assertion, arguing somewhat confusingly that "[b]ecause there is insufficient evidence of the delegation of discretion to the Plan Administrator, and because the Defendant, The Prudential Insurance Company of America, is the plan fiduciary for long term disability coverage, the de novo standard of review is appropriate in this case." [*Id.*] In her response in opposition to defendant's motion for judgment on the record, plaintiff expands upon this contention, arguing that the Plan language from which defendant argues its discretionary authority comes is "not from the plan but from a *summary* of the plan" and as a result, this language does not "vest Prudential with the discretion it requires for the arbitrary and capricious standard of review to apply." [Doc. 9 at 8.] Defendant contends that the Plan language granting it

10

discretionary authority is not from the summary of the plan, but is set forth in the Plan's group certificate and that plaintiff's contentions otherwise are therefore untrue. [Doc. 10 at 2.]

In this case, the Plan states that an employee is deemed disabled when "Prudential determines" that such an employee meets the applicable definition of disability. [AR at 64]. As defendant notes, the Sixth Circuit has recently held that a Prudential plan containing language almost identical to that in the Plan at issue in this case reserved "discretionary authority to Prudential" because that plan "reserve[d] for itself the discretionary authority to make factual determinations" with regard to whether an employee was disabled. *Noland v. Prudential Ins. Co. of America*, 187 Fed. Appx. 447, 452 (6th Cir. June 2, 2006) (citations removed). Here, the Plan accords precisely that kind of authority to defendant – under its express language, it tasks defendant with determining whether, based upon the relevant facts, a particular employee is disabled within the meaning of the Plan. [*See* A.R. at 64.] Thus, in accordance with Sixth Circuit case law, the language in the Plan is sufficient to accord defendant the discretionary authority to determine eligibility for benefits and to construe the terms of the Plan. Accordingly, the arbitrary and capricious standard of review applies, *Firestone*, 489 U.S. at 115, and plaintiff's attempt to advocate for a different standard of review is not well-taken.

Thus, the issue now before the Court is whether defendant's denial of long-term disability benefits to plaintiff constitutes an arbitrary and capricious decision based upon the administrative record. "This standard is the least demanding form of judicial review of

administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Killian*, 152 F.3d at 520 (citations and internal quotation marks removed). Applying this standard of review requires that the plan administrator's "decision be upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health and Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). If the decision was arbitrary, capricious, not supported by substantial evidence or contrary to the law, the decision will be overturned. *Daniels v. Sovereign Coal Corp.*, 1995 WL 230285 at **1 (6th Cir. April 14, 1995) (citations omitted). Finally, "merely because [the Court's] review must be deferential does not mean [its] review must also be inconsequential. While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decision only for the purpose of rubber stamping those decisions." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005).

### B. Breach of Fiduciary Duty

Plaintiff argues that defendant breached its fiduciary duty owed to her by failing to provide her with rehabilitative assistance. [Doc. 6 at 16.] Specifically, plaintiff argues that, despite her requests that defendant provide her with vocational assistance, "Defendant...violated its fiduciary duty to Ms. Gibson by failing to offer her any participation in a rehabilitation program." [*Id.*] However, as defendant correctly notes, the express

language of the Plan does not require that defendant offer such a program to all employees. [Doc. 8 at 14.] Rather, the Plan provides as follows: "Once the initial review is completed by our rehabilitation program specialists working along with your doctor and appropriate specialists, Prudential may elect to offer you and pay for a rehabilitative program." [AR at 79.] Given the Plan's clear mandate that defendant "may elect" to offer an employee rehabilitative assistance but must not do so, defendant therefore has the discretion to grant or deny such a request. Thus, the Court cannot determine that defendant breached any fiduciary duty owed to plaintiff on account of its decision to appropriately exercise its discretion here. Accordingly, plaintiff's claim for breach of fiduciary duty fails and defendant is entitled to judgment as a matter of law on plaintiff's claim for breach of fiduciary duty.

Furthermore, even if the language of the Plan could somehow be construed to make the offering of rehabilitative assistance mandatory, plaintiff is precluded from asserting a claim for breach of fiduciary duty by ERISA itself since she is also pursuing a claim for denial of benefits in this action. As the Supreme Court held in *Vanity Corp. v. Howe*, a claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) is the exclusive remedy under ERISA by a claimant for personal recovery when that remedy is available, as it is in this case. 516 U.S. 489, 512 (1996). Here, because plaintiff is pursuing a claim for a denial benefits under that chief remedy provision, [*see* Doc. 1, Ex. A at ¶ 13], she is not entitled to also recover for defendant's alleged breach of fiduciary duty. *Vanity Corp.*, 516 U.S. at 515; *see also Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998) (holding that an individual

who brings a lawsuit pursuant to § 1132(a)(1)(B) to challenge a denial of disability benefits does not also have a right to a cause of action for breach of fiduciary duty under § 1132(a)(3)). Thus, plaintiff's claim for breach of fiduciary duties also fails for this reason.

### C. Denial of Benefits

Again, as the Court determined above, the applicable standard of review of defendant's denial of plaintiff's long-term disability benefits is the arbitrary and capricious standard of review. Defendant's denial of benefits will not be arbitrary and capricious if it is "rational in light of the plan's provisions." *Davis v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988).

The Court has carefully reviewed the administrative record in light of the applicable standard of review and finds that defendant's decision to terminate plaintiff's long-term disability benefits should be upheld. The administrative record contains sufficient evidence to support defendant's decision in that the medical records and the opinions submitted by Dr. White, Dr. Friedman, and Mr. Cretien support the conclusion that, pursuant to the more stringent definition of disability applicable to plaintiff, [AR at 64], plaintiff is capable of performing the duties of some gainful occupation for which she is reasonably suited by education, training, or experience, and is therefore not disabled within the meaning of the Plan.

First, while the May 7, 2003 report from Dr. White imposes certain restrictions upon plaintiff's ability to work – specifically, it prohibits overhead work, lifting over twenty pounds, and requires alternate standing and sitting, [AR at 291] – these relatively minimal

limitations do not restrict plaintiff in such a way that she would be precluded from performing *any* gainful occupation for which she is suited. This evaluation of plaintiff's medical condition strikes the Court as particularly persuasive given that Dr. White was plaintiff's primary care physician and came to his conclusions as to her physical ability to work after multiple evaluations of her in the months immediately following the accident which lead to plaintiff's injuries. [AR at 226; 227-229; 230-231.] Additionally, the Court notes that the only other additional evaluative piece of information defendant had with regards to plaintiff's medical condition at the time it made the decision to terminate her benefits was the April 1, 2005 employability assessment of plaintiff which identified five positions for which she was deemed to have "the residual functional capacity to perform given her current medical status." This medical status was based primarily on Dr. White's May 2003 appraisal of her condition and the resulting limitations he recommended. [AR at 188.] In light of this evidence, the Court does not believe it was unreasonable for defendant to determine that plaintiff was no longer disabled within the meaning of the Plan and to terminate her long-term disability benefits as a result.

Furthermore, the Court finds that defendant's decision to uphold the termination of plaintiff's long-term disability benefits is also supported by the substantial evidence. Supporting Dr. White's conclusions is the comprehensive evaluation of plaintiff's medical records, including the reports filed by Dr. Salekin and Mr. Hankins, conducted by Dr. Friedman once plaintiff filed her appeal of defendant's decision to terminate her benefits. [AR at 296-302.] Dr. Friedman disagreed with the restrictions advocated by Dr. Salekin,

concluding that plaintiff was employable in the positions listed on the April 1, 2005 employability assessment given that plaintiff's medical condition would result only in "inability to perform repetitive cervical movements, limited ability to work with the left arm above shoulder level, and limitation of lifting with the left arm greater than 20 pounds." [*Id.* at 301.] Defendant ultimately chose to adopt Dr. Friedman's recommendations and therefore determined that plaintiff was not disabled within the meaning of the Plan because she was employable in at least the positions listed on the employability assessment of her. Defendant notes that it "acted within its discretion in placing greater weight on Dr. Friedman's opinion concerning the plaintiff's limitations rather than Dr. Salekin's opinion," citing Sixth Circuit precedent for this proposition, [Doc. 8 at 11], and goes on to state its reasons for relying upon Dr. Friedman's opinion. These include Dr. Salekin's lack of board certification and his apparent speciality of sleep disorders, as compared to Dr. Friedman's certification in physical medicine and rehabilitation. [*Id.* at 12-13.]

Plaintiff argues that defendant gives too much weight to the opinion of Dr. Friedman, contending that "the opinions announced by Prudential's physicians are essentially warmed over, mostly second-hand medical data from the past, as opposed to the first-hand, continuing, up-to-date evidence offered by Ms. Gibson's personal medical providers." [Doc. 6 at 11; Doc. 9 at 15.] More specifically, plaintiff argues that defendant did not give enough credence to the restrictions advanced by Dr. Salekin, restrictions which plaintiff claims show she "cannot perform any of the jobs which she has performed in the past or any jobs suggested by a transferrable skills analysis." [Doc. 6 at 13.] However, as the Supreme Court

has held and as plaintiff herself admits, [Doc. 9 at 14-15], "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Furthermore, as noted above, defendant has offered rational reasons as to why it chose to adopt Dr. Friedman's ultimate conclusions as to plaintiff's abilities to work over those of Dr. Salekin, [*see* Doc. 8 at 12-13], and has demonstrated that, despite plaintiff's claim to the contrary, it carefully and holistically considered all of the evidence before it in making its decision with regard to plaintiff. [*Id.* at 13-14.] Thus, in light of the administrative record and the applicable law, defendant's decisions to accord more weight to Dr. Friedman's opinion and to uphold its decision to terminate plaintiff's long-term disability benefits strikes the Court as being entirely reasonable.

Viewed in its entirety, the administrative record indicates that defendant carefully considered all relevant evidence before it in determining whether to terminate plaintiff's long-term disability benefits and was ultimately reasonable and rational in concluding that plaintiff no longer met the Plan's more stringent definition of being disabled. Thus, defendant's decision was not arbitrary and capricious.

## II. Conclusion

For the reasons set forth herein, plaintiff's Motion for Judgment on the Administrative Record [Doc. 6] is **DENIED** and defendant's Motion for Judgment on the Record [Doc. 7] is **GRANTED**, and judgment will be entered in favor of defendants.

The Clerk is directed to enter judgment accordingly.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE